IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KONINKLIJKE KPN N.V., ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 17-cv-90-LPS |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| SIERRA WIRELESS, INC., AND ) | |
| SIERRA WIRELESS AMERICA, INC., ) | **FILED UNDER SEAL** |
| ) | |
| Defendants. ) | |

## KPN'S REPLY IN SUPPORT OF MOTION
## TO SEAL LIMITED SECTIONS OF TRANSCRIPT

Sierra Wireless's response fails to rebut KPN's showing that good cause exists to seal those portions of the October 24, 2018 telephonic hearing transcript on Sierra Wireless's motion to compel that refer to and would disclose the terms of KPN's highly confidential, proprietary patent-license agreements with various third parties[1] *See* Motion Exh. A, D.I. 169-1 at 2–58 (identifying portions of the transcript that KPN has requested the Court seal).

Sierra Wireless's "public interest" argument hinges entirely on its claims (1) that one or more "Sisvel" entities[2] is KPN's licensing agent and (2) that, because KPN filed an infringement suit against Sierra Wireless, the public somehow has an interest in the terms of the highly confidential licensing agreements KPN entered into with those Sisvel entities and a number of

---

[1] Although Sierra Wireless does not directly address it, KPN also has requested that the Court redact a portion of the transcript that relates to deposition testimony regarding whether ████████ Motion Exh. A, D.I. 169-1 at 22. Such testimony likewise implicates the sensitive business concerns of both KPN and the Sisvel entities at issue and is irrelevant to the merits of this case.

[2] KPN notes that, in Sierra Wireless's opposition, it continues its practice of treating the various "Sisvel" entities as if they are a single company. They are not, and the portions of the transcript at issue include terms from agreements involving Sisvel UK and, separately, Sisvel International.

other third parties. *See, e.g.*, Exhibit 9 to Sierra Wireless's Compel Letter, D.I. 144-9 (███

███

███).³ Neither assertion is correct.

As this Court recently held, none of the Sisvel entities at issue is KPN's agent. December 4, 2018 Oral Order (denying Sierra Wireless's motion in part because "[t]he contract between KPN and Sisvel did not create an agency relationship"). Moreover, Sierra Wireless offers no support for its apparent belief that the mere act of KPN filing an infringement suit created a *public* interest in the terms of those agreements. There is a reason. As KPN explained in its motion, it is recognized that confidential licensing terms like those at issue "should be protected" because "this is the type of information which, while largely incidental to the substantive issues in this case, could cause real and serious harm to the parties' future negotiations if disclosed to competitors." *E.g.*, *Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 507, 510 (D. Del. 2012) (Burke, J.).

Sierra Wireless's "burden of proof" argument similarly fails. Not only does it ignore the supporting affidavit of Mr. Koenraad Wuyts, KPN's Chief Intellectual Property Officer, in which he explains how ███████████████████████████████████████████████████████, D.I. 169-3 at 1–4, but Sierra Wireless does not even attempt to distinguish *Mosaid* and its holding that the disclosure of licensing terms is *understood* to be harmful.

## ARGUMENT

I. **Sierra Wireless Fails to Show Disclosure Is Necessary to Serve the Public Interest.**

Sierra Wireless first argues that "the public interest in access to judicial proceedings and records here is strong and weighs heavily against granting Plaintiff KPN's motion." Opp., D.I.

---

³ KPN notes ███████████████████████████████████████████████
███████████████████████████████████████████████ D.I. 169-3 at 3 ¶ 6.

173 at 1. It further argues that the public has a right to "understand KPN's coordination with its licensing agent Sisvel in breach of KPN's FRAND . . . licensing obligations" and that "KPN knew or should have known the public's interest in understanding the nature of KPN's patent enforcement efforts on the same patent in conjunction with its licensing agent, Sisvel." *Id*. at 1–2. Sierra Wireless's argument fails for several reasons.

*First*, as shown above, Sierra Wireless's argument relies heavily on its characterization of the various Sisvel entities as KPN's "licensing agent"—describing "Sisvel" as KPN's licensing agent no fewer than five separate times in the span of two pages. Opp., D.I. 173 at 1–2. Yet this Court held the opposite to be true, explaining that "[t]he contract between KPN and Sisvel did *not* create an agency relationship, particularly given the substantial freedoms afforded Sisvel with respect to licensing KPN's patents." December 4, 2018 Oral Order, D.I. 174 (emphasis added).

*Second*, Sierra Wireless's argument fails because—when considering whether the public interest is implicated in a particular case—the primary concern is whether the "proposed redactions would obscure any discussion of the actual nature of the parties' dispute." *Mosaid,* 878 F. Supp. 2d at 507, 512, 514. And here, Sierra Wireless makes no attempt to demonstrate how the subject matter of KPN's proposed redactions pertains to the substantive disputes in this case. Certainly, Sierra Wireless does not explain how the licensing terms at issue have any bearing on "KPN's patent enforcement efforts" or KPN's alleged "FRAND violations." Opp., D.I. 173 at 1–2. There is a reason: no such connection exists. The terms at issue are just that—licensing terms that are, at best, "incidental to the substantive issues in this case." *Mosaid*, 878 F. Supp. 2d at 510.

Indeed, the only reason these terms even are at issue is because *Sierra Wireless* relied on them to argue that the Court should compel KPN to obtain and produce documents and other information from various Sisvel entities—a request this Court denied because it *disagreed* with

Sierra Wireless's interpretation of the exact contractual terms at issue. December 4, 2018 Oral Order (denying motion to the extent it sought to require KPN to obtain and produce Sisvel documents and information). Contrary to what Sierra Wireless represents to the Court in its opposition, KPN's complaint not only makes *no* reference to any Sisvel entity or action, but KPN consistently has told Sierra Wireless both (1) that Sisvel is not KPN's agent and (2) that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *E.g.*, Exh. 1, KPN 30(b)(6) Tr. at 340:13-22 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (objections omitted)); *see id.* at 339:7-9, 364:11-365:2 (testifying that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

*Finally*, Sierra Wireless's argument also fails because its own authority makes clear that, "[a]lthough the common law right to public access is a recognized and venerated principle, courts have also recognized the accompanying principle that 'the right is not absolute.'" *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) (quoting *Littlejohn v. Bic Corp.*, 851 F.2d 673, 678 (3d Cir. 1988)); *Mosaid*, 878 F. Supp. 2d at 507 (recognizing that while "there is a strong presumption in favor of public access to all judicial records[,] . . . that presumption is not absolute"). Accordingly, the Third Circuit has explained that, "[d]espite the presumption, courts may deny access to judicial records, for example, where they are sources of business information that might harm a litigant's competitive standing." *Littlejohn*, 851 F.2d at 678.

That is exactly the situation here. As KPN argued in its motion, this case is little different from *Mosaid*, in which the court determined that good cause existed to redact those portions of the

4

judicial transcript that related to a party's confidential patent-licensing terms. 878 F. Supp. 2d at 510. As the court held, "terms that relate to pricing, valuation, monetary payments, and financial information should be protected." *Id.* The court explained that "this is the type of information which, while largely incidental to the substantive issues in this case, could cause real and serious harm to the parties' future negotiations if disclosed to competitors. It is also the sort of material that courts have frequently redacted." *Id.*

Like in *Mosaid*, KPN seeks to redact those portions of the hearing transcript that refer to the proprietary, confidential terms of KPN's patent-licensing agreements with various third parties, ████████████████████. KPN submitted a sworn affidavit from its Chief Intellectual Property Officer, Mr. Wuyts, stating that "████████████████████████████████████████████████████████." Motion Exh. C, D.I. 169-3 at 2 ¶ 5. That is not all. Mr. Wuyts also states: "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████." *Id.* at ¶ 6. In short, Mr. Wuyts's statements—which Sierra Wireless all but ignores—identify the specific competitive harm that KPN would suffer were its licensing terms disclosed to the public.

Sierra Wireless's response does nothing to diminish this reality. Rather than attempting to address why *Mosaid*'s reasoning should not apply here, Sierra Wireless basically ignores it—offering no explanation whatsoever as to why its reasoning should not apply here. Sierra Wireless treats Mr. Wuyts's affidavit similarly. Instead of addressing the specific harms Mr. Wuyts identifies, Sierra Wireless labels KPN's summary in its motion as "speculative, conclusory, and insufficient" and argues that they should be disregarded. Opp., D.I. 173 at 3.

The cases Sierra Wireless cites also do nothing to support its argument. *In re Cendant Corp.*, for example, had nothing to do with transcript redactions. 260 F.3d at 192. Rather, it addressed whether a bid to be lead class action counsel was a "judicial record." *Id.* And while *Merck & Cie v. Watson Labs. Inc.* did concern a redaction request, there the entirety of the movant's statement regarding the potential harm it would suffer were the information to be disclosed was that "[s]uch information is not public and *may* be harmful to Watson were it to become public." *Compare* Unopposed Motion to Redact Transcript, *Merck & Cie v. Watson Labs. Inc.*, No. 12-cv-00161-RGA (D. Del. Oct. 16, 2012), D.I. 42 at 2 (emphasis added) (attached as Exhibit 2), *with* Order, Exh. A, D.I. 173-1 at 3 (denying motion because it did not disclose potential harm with specificity). In contrast, Mr. Wuyts specifically states that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.'" D.I. 173-1 at 123 ¶¶ 4–6.

**II.     Sierra Wireless Fails to Rebut KPN's Showing That It Would Be Harmed Were Its Confidential Licensing Terms Disclosed to the Public.**

Next, Sierra Wireless argues that "Plaintiff KPN fails to show, and certainly does not sustain its burden in showing, that disclosure will impose a clearly defined and serious injury to KPN." Opp., D.I. 173 at 2. Once again, Sierra Wireless is incorrect.

As a preliminary matter, and as explained above, Sierra Wireless ignores that the licensing terms at issue do not implicate just KPN's interests. They affect the interests of KPN, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇"

But even as to just KPN's interests, Sierra Wireless's argument that KPN has not shown good cause because its potential injury is "speculative" and "conclusory" fails. Opp., D.I. 173 at 3. In support of this contention, Sierra Wireless cites to a minute order issued in *TCL Communications Technology Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson* and a pretrial hearing transcript in *International Business Machines Corp. v. Groupon, Inc.* But neither the minute order nor the hearing transcript addresses whether harm to a movant's competitive standing or business relationships is speculative or conclusory. Rather, both address factually distinguishable issues.

In *TCL Communications Technology Holdings*, the court determined that "it improperly redacted some information in its previous order" because "[t]he structure of Samsung's licensing deals . . . did not meet the Court's definition of trade secrets." Opp., Exh. B, D.I. 173-.2 at 2. Here, KPN is not asking the Court to make any redactions on the basis of trade secrets. Nor is such a showing necessary. Rather, as explained in *Mosaid*:

> Every court has inherent supervisory power, and the Third Circuit has held that courts may exercise that power to deny access to judicial records, for example, "where they are sources of business information that might harm a litigant's competitive standing." Indeed, the Federal Rules of Civil Procedure empower courts to make any order that justice requires to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense," including "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."

878 F. Supp. 2d at 507.

In *International Business Machines*, IBM sought to "close the courtroom" for trial because it intended to disclose the terms of its licensing agreements with third parties as evidence in support of its damages model. Opp., Exh. C, D.I. 173-3 at 31, 34. These circumstances differ from KPN's motion in two significant respects. First, unlike IBM's *wholesale* request to seal the courtroom

7

for trial, KPN seeks to redact *only* limited portions of a telephonic discovery hearing transcript. Second, unlike IBM, KPN did not disclose the terms of its licensing agreements as a part of its affirmative case. Rather, as discussed above, it was Sierra Wireless who put these terms at issue as support for its argument that KPN should be required to obtain and produce documents from various Sisvel entities.

Finally, Sierra Wireless's attempt to characterize KPN's description of its potential injuries as insufficiently broad fares no better. Opp., D.I. 173 at 2 (citing *Cendant* and *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786 (3d Cir. 1994)). Neither *Cendant* nor *Pansy* addresses whether a movant's alleged injuries are broad or insufficient. As discussed above, in *Cendant* the court was considering whether lead counsel bids were judicial records. In *Pansy*, the court remanded to the district court because its decision "provided guidance in a previously unchartered area." 23 F.3d at 792.

## CONCLUSION

KPN respectfully submits that the Court should grant KPN's Motion to Seal Limited Sections of the October 24, 2018 discovery dispute transcript.

Dated: December 10, 2018

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

8

        Lexie G. White (admitted *pro hac vice*)
        Hunter A. Vance (admitted *pro hac vice*)
        Alejandra C. Salinas (admitted *pro hac vice*)
        Jeffrey S. David (admitted *pro hac vice*)
        SUSMAN GODFREY, L.L.P.
        1000 Louisiana Street, Suite 5100
        Houston, Texas 77002
        Telephone: (713) 651-9366
        Facsimile: (713) 654-6666
        lwhite@susmangodfrey.com
        hvance@susmangodfrey.com
        asalinas@susmangodfrey.com
        jdavid@susmangodfrey.com

        Andres C. Healy (admitted *pro hac vice*)
        SUSMAN GODFREY L.L.P.
        1201 Third Avenue Suite 3800
        Seattle, WA 98101-3000
        Telephone: (206) 505-3843
        Facsimile: (206) 516-3883
        ahealy@susmangodfrey.com

        *Attorneys for Plaintiff*