# EXHIBIT 1

**REDACTED**

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MERCK & CIE, BAYER PHARMA AG and )
BAYER HEALTHCARE )
PHARMACEUTICALS INC., )
                              )
        Plaintiffs, )   C.A. No. 12-161-RGA
                              )
       v. )   **PUBLIC VERSION**
                              )
WATSON LABORATORIES, INC., )
                              )
        Defendant. )

## UNOPPOSED MOTION TO REDACT TRANSCRIPT

OF COUNSEL:

Steven J. Lee
Charles A. Weiss
KENYON & KENYON LLP
1 Broadway
New York, NY 10004-1007
Tel: (212) 425-7200

Dated: October 16, 2012
Public Version Dated: October 24, 2012
1080624 / 39027

Richard L. Horwitz (#2246)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant*
*Watson Laboratories, Inc.*

Defendant Watson Laboratories, Inc. ("Watson") respectfully moves this Court for an Order redacting certain Confidential Information from the transcript of the hearing on plaintiffs' motion to dismiss held on September 24, 2012 (D.I. 38). By this motion, Watson seeks to protect certain proprietary and confidential business information. ████████████████

███████████████████████████████████████████████████

████████████████████████████████████████ Such information is not public and may be harmful to Watson were it to become public. A protective order has yet to be entered in this matter. Watson's proposed redactions are set forth in the attached redacted version of the transcript (Exhibit A hereto).

The deadline to submit the redacted transcript is October 16, 2012, and the date of release of the transcript restriction is set for December 26, 2012.

Counsel for Watson contacted counsel for Plaintiffs regarding this Motion; Plaintiffs do not oppose the relief requested herein.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Steven J. Lee
Charles A. Weiss
KENYON & KENYON LLP
1 Broadway
New York, NY 10004-1007
Tel: (212) 425-7200

By: /s/ Richard L. Horwitz
    Richard L. Horwitz (#2246)
    Bindu A. Palapura (#5370)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19801
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    bpalapura@potteranderson.com

Dated: October 16, 2012
Public Version Dated: October 24, 2012
1080624 / 39027

*Attorneys for Defendant*
*Watson Laboratories, Inc.*

# EXHIBIT A

1

1         UNITED STATES DISTRICT COURT

2         FOR THE DISTRICT OF DELAWARE

3

4    MERCK & CIE, ET AL          :    CA NO. 12-161-RGA

5                                :    September 24, 2012

6              Plaintiffs,       :

7                                :    10:00 O'clock a.m.

8    v.                          :

9                                :

10   WATSON LABORATORIES INC      :

11                               :

12             Defendant,        :

13   . . . . . . . . . . . . . . . . . . . . . . . . . :

14

15

16         TRANSCRIPT OF MOTION TO DISMISS

17   BEFORE THE HONORABLE RICHARD G. ANDREWS

18         UNITED STATES DISTRICT JUDGE

19

20

21   APPEARANCES:

22

23   For Plaintiffs:       MORRIS, NICHOLS, ARSHT & TUNNELL

24                    BY:  JACK B. BLUMENFELD, ESQ

25                         -and-

2

```
 1                          BARTLIT BECK HERMAN PALENCHAR & SCOTT

 2                          BY:  ASHA L. I. SPENCER, ESQ

 3                          BY:  ADAM K. MORTARA, ESQ

 4                          BY:  KATHERINE G. MINARIK, ESQ

 5

 6

 7   For Defendant:        POTTER, ANDERSON & CORROON

 8                          RICHARD L. HORWITZ, ESQ

 9                               -and-

10                          KENYON & KENYON

11                          BY:  STEVEN J. LEE, ESQ

12                          BY:  MICHAEL W. GLYNN, ESQ

13

14

15

16

17

18   Court Reporter:       LEONARD A. DIBBS

19                          Official Court Reporter

20

21

22

23

24

25
```

3

```
 1
 2                      P R O C E E D I N G S
 3
 4          THE COURT:  Good morning.  Please be seated.
 5          We're here in Merck & Cie vs Watson Laboratories, Civil
 6   Action No. 12-161.
 7          Mr. Blumenfeld, who have you got with you?
 8          MR. BLUMENFELD:  For the plaintiffs at counsel table,
 9   Asha Spencer, Adam Mortara and Katherine Minarik from the Law
10   firm of Barlit Beck.  In the back is Dana Hubbard, who is
11   In-House Counsel for Merck.
12          Ms. Spencer is going to present the argument this
13   morning with your Honor's approval.
14          THE COURT:  That's fine.  Thank you.
15          Mr. Horwitz, who have you got with you?
16          MR. HORWITZ:  Good morning, your Honor.  Rich Horwitz
17   from Potter, Anderson & Corroon on behalf of Watson.
18          With me from Kenyon and Kenyon is Steven Lee and
19   Michael Glynn.
20          Mr. Lee will be presenting the argument on behalf of
21   Watson.
22          One point before we get started that we wanted to raise
23   with the Court.  And I note that everyone in the courtroom is
24   covered under the Protective Order.
25          Because of the issues that we're going to be discussing
```

Case 1:17-cv-00006-PSC Document 183-1 Filed 10/17/18 Page 10 of 41 PageID #: 4047
Case 1:12-cv-00161-RGA Document 42 Filed 10/24/12 Page 10 of 36 PageID #: 240

4

1  today, we'd like the opportunity to be able to approach the

2  Court depending on how things are discussed during this hearing

3  and to have the transcript sealed, or at least certain parts of

4  it sealed because of the issues that are brought up in this

5  motion.

6          THE COURT:  All right.

7          I'll give you the opportunity.  You should expect that

8  I will not seal anything.

9          MR. HORWITZ:  Understood.

10          Thank you.

11          THE COURT:  I guess this is the plaintiffs' motion.

12          Ms. Spencer, I have read the briefs and I have read the

13  declarations that are attached to the briefs.

14          MS. SPENCER:  Thank you, your Honor.  Good morning.

15  Asha Spencer for plaintiffs Merck and Bayer.

16          This is a Hatch-Waxman case regarding Bayer's Beyaz

17  product, which is a monthly oral contraceptive.

18          I want to start by first walking through the key dates

19  at issue for this motion.

20          In this case, Watson sent the FDA its ANDA application

21  on November 21st of 2011.

22          The FDA initially acknowledged receipt of that ANDA and

23  instructed Watson to send a notice letter to us.  Watson sent

24  that notice letter and Bayer and Merck subsequently filed suit

25  for patent infringement under the Hatch-Waxman Act on February

1   10th, 2012.

2

3

4

5

6

7

8         Because an accepted ANDA is a necessary predicate for

9   Hatch-Waxman litigation, we filed this Motion to Dismiss.

10         In Watson's July 10th response in the Motion to Dismiss

11  briefing, Watson submitted these sworn declaration of its

12  regulatory affairs expert.

13

14

15

16

17

18         But then, and this is a new development that's not

19  reflected in the briefing.  On July 23rd, the date that our

20  reply brief was filed on this motion and less than two weeks

21  after Watson's witness, Ms. Sharp, testified in her declaration

22  about what Watson believed would solve the problem before the

23  FDA, Watson sent a letter to the FDA.

24         That letter did not state that Watson was preparing and

25  planning to submit the results of the bioequivalent study the

 1   FDA required.  Instead that letter sought to explain why Watson

 2   did not include that bioequivalent study in its original

 3   application, ███████████████████████████████████████████

 4   ██████████████████

 5          This is a new position which Watson has not informed

 6   this Court about.  It did not supplement its filings.  And this

 7   position conflicts with the sworn testimony offered by Ms. Sharp

 8   in her declaration.

 9          Watson's first produced --

10          THE COURT:  I can't recall.  Did she say they had the

11   bioequivalent data at hand or they had to do some testing?

12          MS. SPENCER:  Ms. Sharp stated that they were working

13   to compile the necessary bioequivalent data and that Watson

14   believed they would be ready to submit that data to the FDA at

15   the end of September.

16          THE COURT:  Is there anything inconsistent with them

17   working on submitting that data in the meantime saying.  FDA,

18   you made a mistake, do you want to reverse yourself again?

19          MS. SPENCER:  While it's not necessarily inconsistent,

20   we note that the letter to the FDA -- what is inconsistent, your

21   Honor, is that the letter to the FDA did not seek to have the

22   FDA accept Watson's demand on the basis of the new bioequivalent

23   study, ██████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████

1    THE COURT:  She said it would happen at the end of

2 September?

3    MS. SPENCER:  Correct, your Honor.

4    THE COURT:  We're at the end of September now.  Who is

5 to say that Watson is not filing that letter and data, study

6 this week?

7    MS. SPENCER:  Correct, your Honor.  We don't know.  And

8 we have no ability to know at this point what Watson has or has

9 not further submitted to the FDA.

10    The only information we have is the July 23rd letter

11 that Watson sent to the FDA, which was first produced to us this

12 past Friday evening.

13    THE COURT:  All right.

14    MS. SPENCER:  This letter, however, does not change

15 whatsoever the analysis here today, ████████████████

16 ████████████████████████████████████████████

17    This case must therefore be dismissed.

18    THE COURT:  If I do dismiss it, and so your motion is

19 lack of subject matter jurisdiction which can cover lots of

20 different things.  It's sort of theory as to what causes a lack

21 of subject matter jurisdiction.

22    What is your best theory, combining the facts and

23 accepted legal theory as to what I should say and when

24 dismissing it?

25    MS. SPENCER:  Certainly, your Honor.

Case 1:12-cv-00090-LPS Document 182-1 Filed 12/17/12 Page 14 of 41 PageID #: 4251
Case 1:12-cv-00161-RGA Document 42 Filed 10/24/12 Page 14 of 38 PageID #: 244

8

1       This Court lacks subject matter jurisdiction because

2  there is no case or controversy that can be adjudicated by this

3  Court.

4       And we have a proposed order that outlines that this

5  case must be dismissed due to that lack of case or controversy.

6  The order provides that if or when Watson is ever able to submit

7  a sufficiently complete ANDA to the FDA, that Watson would be

8  required to send a notice letter.  And it would be that notice

9  letter that would trigger the 45 day time period in which Bayer

10  or Merck could elect to file suit and would also commence the 30

11  month stay.

12       Your Honor, we believe that there is no case or

13  controversy here, because it is established that 271(e)(2)

14  reaches the outer limits of a Court's case or controversy

15  jurisdiction.

16       And in a situation such as this where the requirement

17  of 271(e)(2) has not been satisfied, there is no case or

18  controversy, and so, there is no subject matter jurisdiction.

19       To constitute an act of infringement that satisfies

20  271(e)(2), a generic applicant must submit an ANDA that is

21  received by the FDA.

22       And the Court in SB Pharm Co explained this.  The words

23  submitted in 271(e)(2) must mean more than the mere sending in

24  of a sheet of paper to the FDA.  It must mean that the FDA has

25  accepted that sheet of paper as an ANDA that is sufficiently

Case 1:12-cv-00161-RGA Document 842 Filed 10/24/12 Page 15 of 41 PageID #: 4252
Case 1:12-cv-00161-RGA Document 842 Filed 10/24/12 Page 12 of 38 PageID #: 245

9

1   complete.

2          THE COURT:  Submitted, the act of infringement by

3   itself is not sufficient to be that act of infringement.  You

4   then can also have the FDA say that it's received, accepted as

5   being sort of complied with the procedural demands?

6          MS. SPENCER:  Your Honor, under the statutory language,

7   the submission of an ANDA must conform to the statutory

8   requirements and must also be received by the FDA, therefore, no

9   formal submission has occurred until an ANDA that complies with

10  the statutory requirement, which includes that that ANDA include

11  the necessary bioequivalent data.  It's sent to the FDA and

12  reviewed and then received by the FDA as substantially complete

13  so as to merit substantive review.

14         The Court in SB Pharm Co explained that it would not

15  make sense for the statute and its enabling regulations to

16  construct a safeguard against the filing of incomplete ANDAs,

17  only to allow those exact same incomplete ANDAs to constitute

18  the act of infringement under 271(e)(2.

19         And this makes sense in light of Congress' intent to

20  insure that generic applicants couldn't prematurely trigger

21  Hatch-Waxman litigation through incomplete ANDAs.

22         To avoid this exact consequence, the Hatch-Waxman

23  Congress in the Hatch-Waxman Act, created a very carefully

24  orchestrated framework for patent litigation.

25         And under that framework, litigation can only be

Case 1:17-cv-00090-LPS Document 182-1 Filed 12/17/18 Page 16 of 41 PageID #: 4253
Case 1:12-cv-00161-RGA Document 42 Filed 10/24/12 Page 15 of 38 PageID #: 246

10

1   triggered when a generic applicant files an ANDA that the FDA

2   then receives as being sufficiently complete.  At that point,

3   the FDA notifies generic that they may send the requisite notice

4   letter thus starting the entire Hatch-Waxman litigation process.

5        But without a received ANDA, the generic cannot send

6   that notice letter and litigation cannot begin.

7   ████████████████████████████████████████████████

8   ████████████████████████████████████████████████

9

10       Congress in the House Report accompanying the

11  Hatch-Waxman statute addressed this very scenario and stated

12  unequivocally that in a situation where an ANDA does not contain

13  the required bioequivalent data, any notice given pursuant to

14  that ANDA is void and that notice would have to be given again

15  if and when the generic applicant was ever able to file a

16  substantially complete ANDA.

17       Because Watson today --

18       THE COURT:  Is that this exact case?

19       That wasn't cited in your brief. ████████████████

20  ████████████████████████████████████████████████

21

22

23       MS. SPENCER:  To clarify what I was just discussing

24  with the House Report from Congress as opposed to, I believe,

25  you maybe referencing the SB Pharm Co case.

1    In the House Report, Congress addressed the scenario

2    where an ANDA is filed without the necessary bioequivalent data.

3    THE COURT:  But they expected the FDA would notice that

4    the first time around, right?

5    MS. SPENCER:  Your Honor, the House Report does not go

6    into that helpful of nuance with regard to the agency's actions.

7    THE COURT:  All right.  I understand.

8    MS. SPENCER:  ███████████████████████

9    ████████████████████████████████████████████████

10   Watson's initial notice letter today is of no legal

11   effect.  It did not trigger the Hatch-Waxman litigation

12   framework, and it does not create a case for this Court to

13   adjudicate.

14   THE COURT:  I do have the right picture here?  While

15   it's possible that Watson will give up on this generic drug, in

16   all likelihood what we're really arguing about is when the 30

17   month date starts to run, whether it was back in January or

18   whenever it was, or whether some date in the future.  That's the

19   reason why it's important to the parties, right?

20   MS. SPENCER:  Your Honor, it's important to the parties

21   because the statutory framework is very specific.  And the

22   notice letter that was in within that statutory framework plays

23   a very key role and has significant legal effect both with

24   regard to the 45 day window to file suit, the 30 month stay, but

25   also with regard to other issues such as the 180 day exclusivity

Case 1:17-cv-00090-LPS Document 182-1 Filed 12/17/18 Page 18 of 41 PageID #: 4255
Case 1:12-cv-00161-RGA Document 42 Filed 10/24/12 Page 15 of 30 PageID #: 248

12

1    period where one generic stands with regard to potential other

2    generic filers and also forfeiture dates.

3              THE COURT:  In terms of generics, there is no other

4    generic that has filed, right, under this particular drug?

5              MS. SPENCER:  Your Honor, my understanding is that that

6    information is confidential as to Watson and not able to be

7    discussed on the open record.

8              THE COURT:  In any event, go ahead.

9              MS. SPENCER:  Your Honor, given the position we find

10   ourselves in today ████████████████████████████████████

11   there is no case or controversy for plaintiffs to pursue, and

12   this Court lacks subject matter jurisdiction over this action.

13             MS. SPENCER:  Thank you.

14             THE COURT:  You said something about having a proposed

15   order.

16             MS. SPENCER:  We do have a proposed order that we can

17   file with the Court.

18             THE COURT:  Has Watson seen it?

19             MR. BLUMENFELD:  We just prepared it last night, your

20   Honor.

21             MS. SPENCER:  May I hand it up to the Court?

22             THE COURT:  Yes, you may.

23             Do you have two copies?

24             MS. SPENCER:  Yes, we do.

25             Your Honor, the proposed order covers two points.  The

1   first is the proposed order notes that the paragraph four, that

2   should Watson produce a sufficiently complete ANDA that the FDA

3   accepts, that Watson, at that point, must provide a new notice

4   letter, and that letter will start the 45 day clock as well as

5   the 30 month stay.

6         THE COURT: Your basic position is, until they get

7   themselves in a position that they would have been in if they

8   had done it right the first time, nothing is happening? When

9   they get into that position, it's just as if they had gotten

10  there for the first time?

11        MS. SPENCER: Exactly, your Honor. It makes sense at

12  that point to proceed on the carefully laid out framework

13  Congress has set forth for these types of disputes.

14        The order, you'll see also asks that going forward,

15  Watson be required to produce to plaintiff any further

16  correspondence with the FDA with regard to this ANDA.

17        THE COURT: That's a funny thing to do if I have no

18  subject matter jurisdiction.

19        MS. SPENCER: Your Honor, while this Court lacks

20  subject matter jurisdiction over this case, it's well recognized

21  that even in the absence of subject matter jurisdiction, a court

22  may produce orders that are ancillary to the disposal of this

23  case.

24        And we believe that this provision is ancillary to the

25  disposal of this case for the lack of subject matter

14

1    jurisdiction, moreover, ask that the FDA be informed of these

2    proceedings and be supplied with the briefing and any subsequent

3    order from this case.

4            THE COURT:  Why do you ask for that?

5            MS. SPENCER:  Your Honor, ████████████████████

6    ████████████████████████████████████████████████████

7    ███████████████████████████████████ we feel it would be

8    helpful for them to have an up-to-date understanding of what is

9    proceeding in this matter.

10           THE COURT:  Let's say that today I dismiss this for

11   lack of subject matter jurisdiction, later this afternoon,

12   somebody at the FDA says, Do you know what?  We messed it up for

13   the second time.  So, yeah, Watson, what you've got on file is

14   good enough for us.  Where would that leave us?

15           MS. SPENCER:  Certainly, your Honor.

16           At that point, the FDA would have accepted Watson's

17   ANDA and Watson under the statute would be required to send a

18   notice letter.  And under this Court's order would be required

19   to send a notice letter to Bayer and Merck restarting the

20   litigation process and it would provide Bayer and Merck with the

21   45 day time frame to determine whether to file suit.

22           THE COURT:  All right.  Let me hear from Mr. Lee.

23   Thank you, Ms. Spencer.

24           MS. SPENCER:  Thank you, your Honor.

25           MR. LEE:  Your Honor, Steve Lee for Watson.

1          May I hand up the July 23rd letter?

2          THE COURT:  Sure.

3          Of course, our position, your Honor, is that

4     jurisdiction was proper in this case when it was filed.

5          Watson submitted its ANDA in March of 2011.

6          The Complaint was filed February 2012.  And the actions

7     of the FDA that gave rise to the current motion didn't happen

8     until March 12th, 2012, which is a year after the ANDA had been

9     filed.

10          The average pendency of an ANDA is about 30 months.

11     What we're talking about is the fact that this ANDA has been on

12     file with the FDA for 40 percent of the time that an ANDA is

13     usually on file.

14          THE COURT:  What does that mean?

15          MR. LEE:  What that means is that both this Court has

16     spent time considering these issues based on a Complaint that

17     was filed, properly filed, and the FDA has spent considerable

18     time on this.

19          As the July 23rd letter says, and if you will look on

20     the last page of the July 23rd letter, the back, there is a

21     report of a FDA contact from September in which the Watson

22     employee says -- the report says that the FDA had several

23     internal meetings regarding the ANDA and they will be issuing

24     another letter, which should be completed approximately in about

25     a month.

Case 1:17-cv-00090-LPS Document 182-1 Filed 12/17/18 Page 22 of 41 PageID #: 4259
Case 1:12-cv-00161-RGA Document 42 Filed 10/24/12 Page 19 of 38 PageID #: 252

16

1     THE COURT:  Issuance of a letter to us for this ANDA.

2  Does that mean the notice letter?

3     MR. LEE:  I don't know what the FDA is going to do.

4     The FDA could take, obviously, several different

5  actions.  But one of the actions the FDA could take as your

6  Honor recognized would be to say, we got it wrong the second

7  time, █████████████████████████████████████████████████

8  ███████████████████ and that you should proceed on the basis

9  of the ANDA as was originally filed.

10     THE COURT:  Let's assume for the sake of argument, not

11  as a factual matter, but let's assume there was a second filer

12  out there, and let's assume that I don't dismiss this for lack

13  of subject matter jurisdiction and let's further assume that you

14  don't infringe their patents, or the patents are invalid, but

15  somewhere you get to, you and the second filer, actually, the

16  other filer -- let's assume the second filer, both are marching

17  towards the launch.

18     I take it you will probably be in litigation as to who

19  is actually the first filer and who actually ask the second

20  filer?

21     MR. LEE:  My experience has been that every time the

22  FDA makes a decision, somebody sues.  So I think you're right.

23     THE COURT:  All right.

24     That would be something that might easily -- and I also

25  see in the briefing something about the Administrative

1   Procedures Act. But I take it you have not filed anything under

2   the Administrative Procedures Act?

3           MR. LEE: No, your Honor.

4           Section 21 CFR, Section 314.103 is the section on

5   dispute resolution in the FDA. And it provides for a gradually

6   escalated process where, first of all, you write back to the FDA

7   and ask them to reconsider. And if that doesn't work, you can

8   set up a meeting with the supervisory people. You can call in

9   experts. You can call in the FDA Advisory Committee. There's a

10  whole lot of stuff that could be done.

11          THE COURT: And the July 23rd letter is sort of a first

12  step for that sort of thing?

13          MR. LEE: A first step, yes, your Honor.

14          Our position would be that there was jurisdiction when

15  this case was filed, clearly jurisdiction. There was no problem

16  with that.

17          The issue as to whether jurisdiction continues, we say

18  is based on the mootness doctrine, not on the original

19  jurisdiction case or controversy.

20          And in our view, the case is not moot, because

21  basically there has been no interim action, which finally and

22  irrevocably destroys the case or controversy.

23          We think that this is simply an initial FDA decision

24  that's on file. And until the FDA responds to our July 23rd

25  letter, possibly thereafter, there simply -- the case is not

Case 1:17-cv-00090-LPS Document 182-1 Filed 12/17/18 Page 24 of 41 PageID #: 4261
Case 1:12-cv-00161-RGA Document 42 Filed 10/24/12 Page 21 of 30 PageID #: 254

18

1   moot.

2           THE COURT:  Let's assume that you submit these

3   bioequivalent studies, and while you're going back and forth

4   with the FDA on their decision, the March 12th decision, I guess

5   it is, in their decision, they say, Hey, do you know what?  The

6   bioequivalent studies that you submitted, they're good.  Your

7   ANDA is now accepted█████████████████

8   █████████████████████████████████████████████████

9   █████████████████████████████████████████████████

10          You might still be pursuing with them a procedure to

11  get them to say, Well, actually,███████████████████

12  ████████████████████████████████ it was the physical

13  application, right?

14          MR. LEE:  Yes, it's possible that the FDA could say,

15  Okay.  We're going to go forward with this, you know, with the

16  review of the ANDA.

17          I think that if they did that, that they would then say

18  that we're entitled to the original date.  But I suppose it's

19  possible that the FDA -- there would be further correspondence

20  with the FDA regarding that date.

21          However, it does seem to me that has nothing to do with

22  the subject matter jurisdiction in this Court.  That is simply a

23  matter between the FDA.

24          THE COURT:  If you had submitted the ANDA and the

25  initial letter from the FDA, the January, late December letter,

Case 1:17-cv-00090-LPS Document 182-1 Filed 12/17/18 Page 25 of 41 PageID #: 4362
Case 1:12-cv-00161-RGA Document 42 Filed 10/24/12 Page 22 of 38 PageID #: 255

19

1    whenever it was and said that your bioequivalent data is

2    lacking, therefore, we're not accepting this at this time.  You

3    couldn't have filed suit, right?

4            You could have sent the letter to the plaintiffs?

5            MR. LEE:  Exactly.  The FDA would not have instructed

6    us to send notice to the plaintiffs, then we'd be in a case

7    which is more similar to the SB Pharm Co case.  But that's not

8    what happened.

9            My co-counsel wants me to make clear that the

10   bioequivalent studies that we're talking about in our July 23rd

11   letter, we want the FDA to accept under -- the FDA is allowed to

12   waive certain requirements in certain circumstances.

13           In our July 23rd letter, what we do is, we request that

14   the FDA waive its requirements in view of what Watson did submit

15   and provide an explanation for why Watson's studies were

16   appropriate.

17           But it's all based on the original studies.

18           THE COURT:  The point being?

19           MR. LEE:  The point being that if the FDA decides in a

20   subsequent letter that our ANDA is, in fact, ███████████

21   ████████ -- it was suitable for filing as they originally said

22   back in December of 2011.

23           In other words, the ANDA would always have been

24   suitable ███████████

25           THE COURT:  All right.

Case 1:17-cv-00090-LPS Document 182-1 Filed 12/17/18 Page 26 of 41 PageID #: 4263
Case 1:12-cv-00161-RGA Document 42 Filed 10/24/12 Page 23 of 38 PageID #: 256

20

1    MR. LEE:  I disagree with some of the comments on the

2    idea of whether the ANDA has to be received in order for there

3    to be an act of infringement under 271(e)(2).

4    We set this forth in our papers. ████████████ is not

5    part of the statute.  It is mentioned by the FDA in its internal

6    regulations.  There is some language about that in the

7    legislative history, but it's not the statute.

8    There are, as co-counsel indicated, a number of

9    consequences of having a submission date having to do with

10   exclusivity, having to do with forfeiture and so forth.

11   And those are specifically to the date of submissions,

12   ████████████████████████████████████

13   I do think that this case is unlike the SB Pharm Co in

14   that it was not a sham ANDA.  It was not a paper -- piece of

15   paper.  Submitting an ANDA is a big deal.  There is a lot of

16   information that goes into it.

17   And, in fact, the FDA carefully reviewed it.  And under

18   its interpretation of the statute at the time, they accepted the

19   ANDA as being complete including the bioequivalent test.

20   Later on, a year later back in March 2012, the FDA

21   issued a guidance on what was required for these ANDAs ████████

22   ████████████████████████████████████████

23   ████████████████████████████████████████

24   ████████████████████████████████████████

25   And that basically is set forth in the July 23rd letter

Case 1:17-cv-00090-LPS  Document 182-1  Filed 12/17/18  Page 27 of 41 PageID #: 4264
Case 1:12-cv-00161-RGA  Document 42  Filed 10/24/12  Page 24 of 30 PageID #: 257

21

1  where Watson says, FDA, we couldn't have known what you were

2  going to do a year later.  And, in fact, when we submitted it in

3  2011, March of 2011, you know, that was sufficiently complete by

4  the standards that you were using at that time.

5         THE COURT:  This is your letter to them?

6         MR. LEE:  That's right.  Our letter to them.

7         THE COURT:  It's not something they said?

8         MR. LEE:  No, it is not.  Our argument to them.

9         I think that's all I have to say, your Honor.

10         THE COURT:  Hold on just one minute.

11         MR. LEE:  I would like to say something to you about

12  the order, which I've just seen.

13         THE COURT:  All right.

14         MR. LEE:  It seems to me that this order goes much

15  father than it needs to go.  They are asking for their case to

16  be dismissed, which is their prerogative.  But the other actions

17  here, it seems to me are really impinging on the FDA's ability

18  to do so its job.  They are telling the FDA basically that --

19         Well, they are telling Watson that they must provide

20  with a new Paragraph 4 Notice Letter.

21         It seems to me whether Watson needs to submit a new

22  Paragraph 4 Notice Letter is something that the FDA is going to

23  decide because the Paragraph 4 Notice Letter, if the FDA finds

24  it's not acceptable, then they will bounce the ANDA.

25         Regarding the correspondence issue, I have no problem

Case 1:17-cv-00090-LPS Document 182-1 Filed 12/17/18 Page 28 of 41 PageID #: 4265
Case 1:12-cv-00161-RGA Document 42 Filed 10/24/12 Page 23 of 30 PageID #: 258

22

1   with providing plaintiffs with correspondence regarding, you

2   know, following up on the July 23rd letter without an order.

3          And, again, I think Paragraph 4 is impinging on the

4   FDA. I don't think they need a copy of this Court's order. I

5   don't think this Court's order actually has any effect on the

6   FDA's examination of Watson's ANDA.

7          THE COURT: No. Putting the most favorable light on

8   this for plaintiffs, it seemed -- these paragraphs like you, I'm

9   reading for the first time. But it seems like they're trying to

10  envision an orderly procedure to follow on.

11         But I would tend to agree with you and sitting here and

12  listening to you, it seems to me that if one does say that there

13  is no lack of subject matter jurisdiction, trying to issue some

14  order to deal with the future, even assuming I have the

15  ancillary power to do that, it doesn't seem like a very good

16  exercise of discretion.

17         I think what you just said makes sense.

18         One of the other things, and maybe there is nothing

19  that can be done about this, but let's say I do what they want,

20  that I dismiss the Complaint, I take out paragraphs two, three

21  and four of the order, and that's the way life is. The case

22  will progress in the future. There are going to be more

23  disputes.

24         If you were to get a letter saying, oops, ██████████████

25  ██████ that was a mistake, not the first letter. Then your

Case 1:17-cv-00090-LPS Document 182-1 Filed 12/17/18 Page 29 of 41 PageID #: 4366
Case 1:12-cv-00161-RGA Document 42 Filed 10/24/12 Page 26 of 30 PageID #: 259

23

1  client probably with some justify justification would be saying

2  that we're certainly entitled to the date of the original

3  letter.

4       And then assuming, however it is that shows up back in

5  court here, maybe then I would have to be deciding that at some

6  point, and the view of a 30 month business, what happened in the

7  30 months would be used up with filing the Complaint, having the

8  Complaint dismissed and refiling the Complaint, if nothing else,

9  it would be sort of a mess, right?

10      MR. LEE:  Maybe I can end this by explaining why Watson

11 is fighting this order, because I don't think that the Court's

12 decision here has any effect on Watson's exclusivity.

13      What I think is that -- Watson wants to get to market

14 with its drug as fast as possible.  They can do that by

15 convincing the FDA that its ANDA was sufficiently complete when

16 it was filed back in 2011.  That would be good for Watson if it

17 can convince this Court to go on with the case, to have the

18 initial scheduling conference, which we were going to have five

19 days after a decision in this case.

20      THE COURT:  Didn't we already have an initial

21 scheduling conference?

22      MR. LEE:  We did.  We were going to have a -- so far,

23 my understanding is that no initial disclosure have been filed,

24 no discovery is being taken.

25      THE COURT:  Did we sort of agree that we would decide

1    this motion first?

2          MR. LEE:  Exactly.

3          My point is that we in order to get to market as

4    quickly as possible, we'd like to convince the FDA that we were

5    right the first time.

6          We'd like to convince the Court that this case should

7    be proceeding and that we should actually be doing discovery,

8    getting ready for trial and so forth so that we can clear all

9    the legal impediments to getting to market as soon as possible.

10   That's why we're opposing the motion.

11         THE COURT:  All right.  Thank you, Mr. Lee.

12         MS. SPENCER:  Your Honor, a very brief rebuttal?

13         THE COURT:  Yes.

14         MS. SPENCER:  Your Honor, I'd like to first address why

15   we are seeking the Form of Order that we are seeking.

16         Your Honor, this is the exact same relief the Court

17   afforded in SB Pharm Co for the purposes of insuring that if or

18   when the generic applicant was able to file a substantially

19   complete ANDA, the litigation would proceed on these tracks laid

20   out by Congress and the FDA in the Hatch-Waxman Act along with

21   its enabling regulation.

22         This is important, because today Watson is in the same

23   position as any other generic currently working with the FDA

24   trying to pull together the necessary data that will satisfy the

25   FDA that that generic has a sufficiently complete ANDA.

Case 1:12-cv-00090-LPS Document 182 Filed 12/17/12 Page 31 of 41 PageID #: 4268

1    Without the order as drafted, should the FDA in the

2    future choose to accept Watson's ANDA application going forward,

3    Bayer and Merck have currently no ability to be aware of that,

4    because it's the very sending of a notice letter, which is the

5    only way that plaintiff in these sorts of case are informed that

6    a generic has filed a substantially complete ANDA application

7    with a Paragraph 4 certification.

8        That's why the notice letter is of such importance.

9        THE COURT:  Presumably, if we're following what the law

10   requires, the FDA is going to do something and they would have

11   to send you a letter.

12       If your basic argument is, in effect, what the FDA did

13   led to Watson sending you a 45 day letter, then you filed suit.

14   If that's all a nullity, then presumably, if that even happens

15   sometime in the future, the same procedures would follow and you

16   would follow suit again?

17       If they don't give you notice, then I presume that

18   knocks them out of the box, right?

19       MS. SPENCER:  Your Honor, that's correct.

20       We believe that the order is important for the sake of

21   judicial economy so that moving forward it is clear given the

22   accepted procedurally uniqueness of this litigation, that the

23   parties know precisely how litigation on this ANDA will proceed

24   going forward and to insure that litigations occurs as thought

25   through by Congress in the statutory scheme as set forth in the

1   Hatch-Waxman Act.

2           That's precisely the reason the Court in SB Pharm Co

3   deemed it necessary to provide an order that stated not just

4   that the case was dismissed that should a sufficiently complete

5   ANDA ever be filed, that the generic would be required to send a

6   new notice letter.  And it would be that notice letter that

7   would trigger the clock.

8           But your Honor, if --

9           THE COURT:  Go ahead.

10          MS. SPENCER:  Your Honor, if this Court does deem it

11  worthwhile to wait to see how the FDA responds to the July 23rd

12  letter, or any other actions with regard to Watson's current

13  ANDA submission, we are okay with a delayed ruling that is able

14  to take into account any contingencies that may occur in the

15  future with regard to the FDA's review of the July 23rd letter

16  or other submissions by Watson.

17          THE COURT:  I'm not sure I understand.

18          What exactly are you saying you're okay with?

19          MS. SPENCER:  Merely that if this Court thinks that it

20  would be informative to see how the FDA responds to the July

21  23rd letter so that we're not resolving -- so that we're not

22  making determinations based on a hypothetical, that we're not

23  clear on exactly how the FDA will respond, Bayer and Merck would

24  be fine with delaying the ruling on this to determine how the

25  FDA responds to Watson's letter, whether they do as this Court

Case 1:12-cv-00090-LPS Document 182-1 Filed 12/17/13 Page 33 of 41 PageID #: 4270
Case 1:12-cv-00161-RGA Document 42 Filed 10/24/12 Page 30 of 38 PageID #: 263

27

1  suggested, instruct Watson to send a new notice letter if Watson

2  is able to complete the necessary bioequivalent studies, or if

3  on the unlikely chance, that the FDA were to tell Watson --

4          THE COURT:  So it sounds to me like what you're really

5  saying -- I don't know whether this is your first choice or

6  second choice, a choice that is acceptable to me, essentially,

7  if I stay the case pending further developments?

8          MS. SPENCER:  Your Honor, we would be comfortable with

9  that decision.

10         If the Court is not comfortable entering an order that

11  clearly sets forth the position of the parties going forward

12  with regard to the situation that has occurred that has brought

13  us here today.

14         As our proposed order outlines, we think it's important

15  to establish that going forward, if Watson is able to file a

16  substantially complete ANDA, then at that point, Watson would be

17  required to go through the procedures set forth in the

18  Hatch-Waxman Act, namely, that they notify the plaintiff of that

19  fact, and then, that notification would trigger the 45 day time

20  frame during which Bayer and Merck could determine whether they

21  wanted to file suit due to that new ANDA application.  And that

22  would also trigger the 30 month stay.

23         THE COURT:  By the way, let me interrupt you for a

24  second.

25         Mr. Lee, there was a question that I meant to ask you.

Case 1:12-cv-00090-LPS Document 182 Filed 12/17/12 Page 34 of 41 PageID #: 2271
Case 1:12-cv-00161-RGA Document 42 Filed 10/24/12 Page 31 of 38 PageID #: 264

28

1    It was essentially this:  There was some talk in the opening

2    argument the Watson's research manager, whatever her title was,

3    said, we're going to submit some new bioequivalent data in

4    September.

5         MR. LEE:  My understanding is that she was over

6    optimistic, your Honor.  My understanding is that, in fact,

7    Watson has been considering doing that, is in the process of

8    doing it to make sure that it would not bootstrap itself if the

9    FDA doesn't accept the letter.  But it hasn't been finished yet.

10         THE COURT:  Is there a timetable that you want to

11   proffer or would you rather not?

12         MR. LEE:  I wish I could, but I don't know.

13         THE COURT:  Thank you.   Hold on a second.

14         MS. SPENCER:  Just two brief points, your Honor.

15         I have been authorized to inform the Court as of today,

16   there is no second filer at issue with regard to Bayez, the

17   product.

18         THE COURT:  There could be one tomorrow.

19         MS. SPENCER:  There could be one tomorrow.  I'm just

20   responding to the Court's earlier question.

21         THE COURT:  No, I appreciate that.

22         MS. SPENCER:  I want to very briefly address Mr. Lee's

23   contention that this case is not moot.

24         This case is moot today, because today there has been

25   no active infringement that can create a case or controversy

1    between the parties.

2        Today Watson is in the same position as any other

3    generic applicant that has not yet been able to satisfy the FDA

4    ████████████████████████████████████████████

5        It is the very acceptance by the FDA of a sufficiently

6    complete ANDA that constitutes the act of infringement under

7    271(e)(2) there and provides this sort of injury, in fact, that

8    creates damage and, therefore, case or controversy jurisdiction

9    in this Court.

10   ████████████████████████████████████████

11   ████████████████████████████████████ There is

12   no injury, in fact, to plaintiff.  And that is why this case is

13   moot, because without an accepted ANDA, there is no act of

14   infringement that has currently taking place, and there is no

15   injury, in fact, to plaintiff.  Therefore, there is no case or

16   controversy, and this case must be distillation had.

17        Your Honor, those are all my points.

18        I'm happy to address anything.

19        THE COURT:  Not withstanding most of your argument on

20   the case must be dismissed and there is no subject matter

21   jurisdiction for this reason or that reason, you could imagine

22   that it might also be appropriate for a stay until some future

23   event occurs ████████████████████████████████

24   ████████████████████████████████████████████

25   ████████████████████████████████████████████

Case 1:17-cv-00090-LPS   Document 182-1   Filed 12/17/18   Page 36 of 41 PageID #: 4373
Case 1:12-cv-00161-RGA   Document 42   Filed 10/24/12   Page 36 of 39 PageID #: 266

30

1    ███████████   But you think that's an acceptable

2    alternative to your filing -- to the responses, and basically,

3    because you think that would help keep some sense of order about

4    the future events if it were essentially we're in Court and it

5    is inactive?

6         MS. SPENCER:  Your Honor, precisely.

7         We believe that because this Court has no jurisdiction

8    today, the action should be dismissed with an order setting

9    forth as discussed in our proposed order.  That if and when a

10   case or controversy does arise, because Watson is able to submit

11   a sufficiently complete ANDA, at that point, the Hatch-Waxman

12   litigation framework is triggered.

13        But the Court and defendant had queried, what does

14   happen if and when the FDA does respond to the July 23rd letter?

15        And our position is simply, if the Court is not ready

16   to enter the proposed order setting forth the rights and

17   responsibilities of the parties going forward so that is clear,

18   because of the current uncertainty about what the FDA may do, it

19   may make sense to stay a ruling until the parties can receive

20   and review the FDA's response to Watson's letter.

21        THE COURT:  All right.  Thank you.

22        Mr. Lee, what do you think about that?

23        MR. LEE:  As I said, your Honor, our position is that

24   we're opposing the motion because we want the case to go

25   forward.

Case 1:12-cv-00090-LPS Document 182-1 Filed 12/17/13 Page 37 of 41 PageID #: 4274
Case 1:12-cv-00161-RGA Document 842 Filed 10/24/13 Page 34 of 38 PageID #: 2674

31

1    If the Court were to issue a stay, that obviously would

2  not be in accord with what we want. However, if the stay were

3  limited, I suppose it wouldn't affect our ability to get into

4  the market as much.

5    THE COURT: Really, I take what it would do would

6  essentially push off what seems to be a difficult issue until

7  another day when it will probably still be a difficult issue,

8  but a different reason as to why it might be a difficult issue

9  as a factual matter is being narrowed down to one.

10    In that regard, you basically -- the way the case is

11  postured right now, the parties understanding is that

12  essentially nothing is triggered until I rule on this motion,

13  right?

14    MR. LEE: My understanding is that your ruling on this

15  motion does not affect what the FDA does.

16    THE COURT: No, no, no. I'm sorry. In terms of

17  discovery?

18    MR. LEE: I think right now my understanding is that

19  everything has been stayed in this case. We do have a discovery

20  cutoff of June or July of 2013, which I still think we could

21  probably do.

22    THE COURT: It sort of depends.

23    You sent a letter on July 23rd. It's now two months

24  later. You're waiting for a response. We could be at

25  Thanksgiving and you could still be waiting for a response.

1          MR. LEE:  It's possible.

2          THE COURT:  If I were to dismiss this for lack of

3     subject matter jurisdiction basically on the plaintiff's order

4     but without paragraphs two, three and four, I'm not actually

5     sure I'm committed one way or another.

6          I take it this would be something that you could appeal

7     to the Federal Circuit and you would have to give some

8     consideration as to whether you could appeal it to the Federal

9     Circuit, because it might be a good thing to have this issue

10    resolved in a more definitive manner than I'm going to be able

11    to resolve it?

12         MR. LEE:  I think this would be a final action that

13    would be appealable.

14         THE COURT:  All right.

15         Okay.  Anything else, Mr. Lee?

16         MR. LEE:  No, your Honor.

17         THE COURT:  All right.  Thank you.

18         Well, I'm certainly not going to enter the order as the

19    plaintiffs have submitted it because I'm very leery of

20    paragraphs two, three and four.

21         If I were going to enter the order, it would just be up

22    through paragraph 1.

23         While I'm not 100 percent sure of the exact legal

24    theory, it does seem to me that right now there is no case given

25    the FDA's treatment of the ANDA that's been submitted.  It's

Case 1:12-cv-00090-LPS Document 182-1 Filed 12/17/12 Page 39 of 41 PageID #: 4276
Case 1:12-cv-00161-RGA Document 42 Filed 10/24/12 Page 36 of 38 PageID #: 269

33

1  essentially akin to an ANDA that was never accepted by them and,

2  so, therefore, it strikes me generally that the case shouldn't

3  be in Court.

4          But I do say -- I mean, I do hear the parties talking

5  about the practical concerns of exactly what will happen based

6  on subsequent events.  I've been given this letter, which I have

7  not read.

8          Should I read this letter before making any ruling?

9          MR. LEE:  I think it's a very technical letter.  Your

10  Honor, if you want, I can summarize it?

11          I think that Watson requests the FDA to waive its

12  requirements on the basis that the testing would require too

13  much blood to be drawn from the patients because they have to

14  test three different drugs in the plaintiff's product.  And they

15  have to do it over a consented period of time.

16          And the Ethics Review Board that asked about that,

17  thought it was to much blood to be drawn from an individual

18  patient.

19          Watson said, Can we test some of the drugs on some

20  patients and test the other drugs on another set of patients so

21  as not so much blood is drawn from some patients.  That's

22  basically our position.

23          If you care, I don't really think it's relevant?

24          The only thing that is relevant it seems to me is the

25  fact that all of this has to do to do with the bioequivalency of

1   the drug to the plaintiff's drug.  But that's not what the

2   patents in this case are about.  They are not about

3   bioequivalency.  They are about the inclusion of an inactive

4   ingredient in the formulation.

5        They are about the inclusion of a particular solid form

6   of a drug, whether you have it or not.

7        They have nothing to do with bioequivalency.

8   Regardless of what the FDA requires or if the FDA accepts this

9   data, there will no change in the issues that are before you.

10       THE COURT:  Of course, if the FDA doesn't accept that

11  data, then what?

12       MR. LEE:  Then there is no ANDAs to be approved.

13       THE COURT:  Right.

14       Okay.  I'm going to take it under advisement.

15       I may issue an order today or tomorrow, I may not.

16       As I said, my inclination is really the subject matter

17  jurisdiction.  I'm going to think about it a little more.

18       All right.  Thank you for the argument.

19       We'll see what happens.

20       We're in recess.

21       (At this time, the hearing concluded)

22

23

24

25

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## **CERTIFICATE OF SERVICE**

I, Richard L. Horwitz, hereby certify that on October 24, 2012, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on October 24, 2012, the attached document was Electronically Mailed to the following person(s):

Jack B. Blumenfeld
Rodger D. Smith II
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801
jblumenfeld@mnat.com
rsmith@mnat.com

Adam K. Mortara
Katherine G. Minarik
Asha L.I. Spencer
Bartlit Beck Herman Palenchar & Scott LLP
54 West Hubbard Street
Chicago, IL 60654
adam.mortara@bartlit-beck.com
katherine.minarik@bartlit-beck.com
asha.spencer@bartlit-beck.com

By:   /s/ Richard L. Horwitz
Richard L. Horwitz
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
Tel: (302) 984-6000
rhorwitz@potteranderson.com
bpalapura@potteranderson.com

1056984/39027